# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Appellate Court No. 10-55379

**JOHNNY GONZALES**, on Behalf of Himself
and All Others Similarly Situated,

      Plaintiff-Appellee,

**v.**

**ARROW FINANCIAL SERVICES LLC,**

      Defendant-Appellant.

## BRIEF OF PLAINTIFF-APPELLEE

On Appeal from the United States District Court
for the Southern District of California,
The Honorable John A. Houston, Presiding

Elizabeth J. Arleo
1672 Main Street, Suite E, PMB 133
Ramona, CA 92065
(760) 789-8000

O. Randolph Bragg
Horwitz, Horwitz & Associates
25 East Washington Street
Suite 900
Chicago, Illinois 60602
(312) 372-8822

Richard J. Rubin
1300 Canyon Road
Santa Fe, New Mexico 87501
(505) 983-4418

Shaun Khojayan
Law Offices of Shaun Khojayan
& Associates, P.L.C.
9454 Wilshire Blvd., Suite 600
Beverly Hills, CA 90212
(310) 274-6111

Attorneys for Plaintiff-Appellee Johnny Gonzales

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………… ii

I. ISSUES PRESENTED FOR REVIEW…………………………………….. 1

II. ARGUMENT OF LAW………………………………………….......... 2

   A. SUMMARY OF ARGUMENT………………………………….. 2

   B. The District Court Properly Entered Summary Judgment
   Establishing Arrow's Liability For Falsely Or Deceptively
   Implying That It Might Report Known Obsolete Debts
   To A Credit Bureau ……………………………………………… 6

      1. Arrow Knew That Federal Law Prohibited Credit
      Reporting These Specific Debts And That The Offending
      Language Was Inapplicable To The Recipients ……………... 6

      2. The FDCPA Strictly Prohibits Debt Collectors From
      Making Any False, Deceptive, Or Misleading Statements
      While Collecting A Debt …………………………………….. 8

      3. The "Credit Bureau" Letters Are Deceptive Since They
      Would Naturally Lead Least Sophisticated Consumers To
      Falsely Believe That Their Debts Could Be, May Have Been,
      Or Would Be Reported To A Credit Bureau ……………….. 10

   C. The Lower Court Correctly Allowed The Jury To Award
   Cumulative Statutory Class Action Damages Under Both
   The FDCPA And The Rosenthal Act …………………………..... 27

      1. The FDCPA And The Rosenthal Act Each Expressly
      Permit Cumulative Class Action Statutory Damages ….…… 27

      2. The Rule Barring Multiple Awards For The Same Injury
      Is Applicable Only To Actual Damages And Thus Is
      Inapplicable Here To The FDCPA and Rosenthal Act
      Statutory Damages That Serve To Deter And Punish
      And Not As Compensation ………………………………… 37

i

III. CONCLUSION ……………………..………………………..………… 42

STATEMENT OF RELATED CASES …………………………..……… 43

CERTIFICATION OF COMPLIANCE PURSUANT TO
FED. R. APP. P. 32(a)(7)(C) AND CIRCUIT RULE 32-1
FOR CASE NUMBER 10-55379 ………………………………………... 43

CERTIFICATE OF SERVICE …………………………………….……... 44

# TABLE OF AUTHORITIES

## Cases

*Abels v. JBC Legal Group, PC,*
227 F.R.D. 541 (N.D.Cal. 2005) ……………….……………….….... 32, 36

*Adams v. CIR Law Offices, LLP*,
2007 WL 2481550 (S.D.Cal. Aug. 29, 2007) …………..……………… 36

*Alkan v. Citimortgage, Inc.*,
336 F.Supp.2d 1061 (N.D.Cal. 2004) ……………………………………… 29

*Ambassador Hotel Co., Ltd. v. Wei-Chuan Investment*,
189 F.3d 1017 (9th Cir. 1999) ……………………………………………… 37

*Associates Financial Services Co. of Wisconsin v. Hornik*,
114 Wis.2d 163, 336 N.W.2d 395 (Wis.App. 1983) ………….……….. 41

*Ayzelman v. Statewide Credit Services Corp.*,
242 F.R.D. 23 (E.D.N.Y. 2007) …………………………….…………… 39

*Baker v. G.C. Services Corp.*,
677 F.2d 775 (9th Cir. 1982) …………………………..……..... 12, 17, 38

*Barany-Snyder v. Weiner*,
539 F.3d 327 (6th Cir. 2008) …………………………….………... 22, 23

*Bartlett v. Heibl,*
128 F.3d 497 (7th Cir.1997) …………………………….………..……… 39

*Boyce Motor Lines, Inc. v. United States,*
342 U.S. 337 (1952) …………………………………………………...…… 15

*Bretana v. Int'l Collection Corp.*,
2010 WL 1221925 (N.D.Cal. March 24, 2010) ………………………….. 35

*Brown v. Card Service Center*,
464 F.3d 450 (3rd Cir. 2006) ……………….…………..…. 11, 18, 19, 20, 21

*Bruesewitz v. Law Offices of Gerald E. Moore & Associates, P.C.*,
2006 WL 3337361 (W.D.Wis. Nov. 15, 2006) …………………………... 41

*Clappier v. Flynn*,
605 F.2d 519 (10th Cir. 1979) ………………...………….…………….. 38

*Clark v. Capital Credit & Collection Services, Inc*.,
460 F.3d 1162 (9th Cir. 2006) ……………………………….…….……… 10, 16

*Clomon v. Jackson*,
988 F.2d 1314 (2d Cir.1993) ……………………………..………….... 11, 17

*Costa v. National Action Financial Services*,
634 F.Supp.2d 1069 (E.D.Cal. 2007) ……………………………….. 35

*Donohue v. Quick Collect, Inc*.,
592 F.3d 1027 (9th Cir. 2010) ………………………………………… 11

*Dowling v. Litton Loan Servicing, LP*,
2006 WL 3498292 (S.D.Ohio Dec. 1, 2006) …………..……………… 41

*Fields v. Wilber Law Firm, P.C*.,
383 F.3d 562 (7th Cir. 2004) ………………………………………... 16

*Floersheim v. F.T.C*.,
411 F.2d 874 (9th Cir.1969) ……………………………………….. 8

*Fox v. Citicorp Credit Services, Inc*.,
15 F.3d 1507 (9th Cir. 1994) ………………………………………..… 9

*Frey v. Gangwish*,
970 F.2d 1516 (6th Cir. 1992) ………………………………………... 8

*F.T.C. v. Colgate-Palmolive Co.*,
380 U.S. 374 (1965) ……………………………………...……………… 15

*F.T.C. v. Gill*,
265 F.3d 944 (9th Cir. 2001) …………………………………….…… 6

*Graziano v. Harrison*,
950 F.2d 107 (3rd Cir. 1991) …………………………………...…… 11

*Hammond v. County of Madera*,
859 F.2d 797 (9th Cir. 1988) …………………………………………... 38

*Hapin v. Arrow Financial Services,*
428 F.Supp.2d 1057 (N.D.Cal. 2006) …………………………………… 12

*Hartman v. Meridian Financial Services, Inc.*,
191 F.Supp.2d 1031 (W.D.Wis. 2002) …………..…………………….. 39

*Hartung v. J.D.Byrider, Inc.*,
2009 WL 1876690 (E.D.Cal. June 26, 2009) …………………………. 36

*Jacobson v. Healthcare Financial Services, Inc.*,
516 F.3d 85 (2d Cir. 2008) …………………………………………...…… 27

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,
__ U.S. __, 130 S.Ct. 1605 (2010) …………………………….…..... 9, 10

*Jeter v. Credit Bureau, Inc.*,
760 F.2d 1168 (11th Cir. 1985) …………………………………….…….. 17

*Johnson v. Eaton*,
80 F.3d 148 (5th Cir. 1996) ……………...…………………………….. 38

*Johnson v. Revenue Management Corp.*,
169 F.3d 1057 (7th Cir. 1999) …………………………….….…… 11, 14

*Kistner v. Law Offices of Michael P. Margelefsky, LLC*,
518 F.3d 433 (6th Cir. 2008) ………………………..…………………… 19

*LeBlanc v. Unifund CCR Partners,*
601 F3d 1185 (11th Cir. 2010) ……………………………………..…….. 20

*Lucero v. The CBE Group, Inc.*,
2010 WL 3894043 (N.D.Ill. Sept. 29, 2010) ……………………..………. 21

v

*McDonald v. Bonded Collectors, LLC*,
233 F.R.D. 576 (S.D.Cal. 2005) ………………………………………….. 32

*McKenzie v. E.A. Uffman and Associates, Inc.*,
119 F.3d 358 (5th Cir.1997) ………………………………………...… 24

*Mejia v. Marauder Corp.*,
2007 WL 806486 (N.D.Cal. March 15, 2007) ………..…...…… 35, 36, 37

*Millenkamp v. Davisco Foods Intern., Inc.*,
562 F.3d 971 (9th Cir. 2009) …………..……………………………….. 42

*Morisaki v. Davenport, Allen & Malone, Inc.*,
2010 WL 3341566 (E.D.Cal. Aug 23, 2010) …………………………….. 36

*Myers v. LHR, Inc.*,
543 F.Supp.2d 1215 (S.D.Cal. 2008) ……………….…………….. 36, 39

*Palmer v. Stassinos*,
233 F.R.D. 546 (N.D.Cal. 2006) …...………………………………….. 32

*Panahiasl v. Gurney*,
2007 WL 738642 (N.D.Cal. Mar. 8, 2007) ……………...…………….. 35

*Payne v. Trans Union, LLC*,
2010 WL 1254298 (E.D.Pa. March 30, 2010) ……………………...… 6

*People v. Harrison*,
48 Cal.3d 321, 768 P.2d 1078, 256 Cal.Rptr. 401 (Cal. 1989) …………... 35

*Piper v. Portnoff Law Associates*,
216 F.R.D. 325 (E.D.Pa. 2003) …………………….……………….. 40

*Pirouzian v. SLM Corp.*,
396 F.Supp.2d 1124 (S.D.Cal. 2005) ……………….…..……………… 30

*Purnell v. Arrow Financial Services, LLC*,
303 Fed.Appx. 297, 2008 WL 5235827 (6th Cir. 2008) …………………. 24

*Quale v. Unifund CCR Partners*,
682 F.Supp.2d 1274 (S.D.Ala. 2010) …………………………………….. 24

*Redd v. Arrow Financial,*
Civil Case No. 03C1341 (N.D.Ill. July 23, 2003) ………...……….. 25, 26

*Reichert v. National Credit Systems, Inc.*,
531 F.3d 1002 (9th Cir. 2008) …………………………………….... 10

*Resort Car Rental System, Inc. v. F. T. C.*,
518 F.2d 962 (9th Cir. 1975) …………………………………..… 16

*Rivera v. Bank One*,
145 F.R.D. 614 (D.P.R. 1993) ……………………………………… 23

*Russell v. Equifax A.R.S.*,
74 F.3d 30 (2d Cir. 1996) ………………………………………….... 19

*Sanchez v. Client Services, Inc.*,
520 F.Supp.2d 1149 (N.D.Cal. 2007) ………...………………………… 30

*Sanders v. Jackson*,
209 F.3d 998 (7th Cir. 2000) ………...…………………………… 39

*Savino v. Computer Credit, Inc.*,
164 F.3d 81 (2d Cir. 1998) …………………………..………………… 39

*Security Pac. Nat'l Bank v. Resolution Tr. Corp.,*
63 F.3d 900 (9th Cir.1995) ……………………………………….. 16

*Silva v. Jason Head, PLC,*
2010 WL 4593704 (N.D.Cal. Nov. 4, 2010) …………………...………… 36

*Simeon Management Corp. v. F. T. C.*,
579 F.2d 1137 (9th Cir. 1978) …………………………………….…… 17

*Smith v. Duffey*,
576 F.3d 336 (7th Cir. 2009) …………………………………..… 21

*Swanson v. Southern Oregon Credit Service, Inc.*,
869 F.2d 1222 (9th Cir. 1988) ……………………..….. 11, 15, 16, 23, 26

*Tavaglione v. Billings*,
4 Cal.4th 1150, 17 Cal.Rptr.2d 608, 847 P.2d 574 (1993) ……………….. 38

*Terran v. Kaplan*,
109 F.3d 1428 (9th Cir. 1997) ………...............................………..…… 11, 12

*U.S. v. Washington*,
235 F.3d 438 (9th Cir. 2000) …………………………………………... 32

*Valdez v. Hunt And Henriques*,
2002 WL 433595 (N.D.Cal. March 19, 2002) …………………………… 12

*Voris v. Resurgent Capital Services, L.P.*,
494 F.Supp.2d 1156 (S.D.Cal. 2007) …………………………………….. 39

*Wade v. Regional Credit Ass'n*,
87 F.3d 1098 (9th Cir. 1996) ……………………….…………..….. 10, 23

*Wilhelm v. Credico, Inc.*,
519 F.3d 416 (8th Cir. 2008) …………………………………...…… 24

## Statutes

Fair Credit Reporting Act,
15 U.S.C. §§ 1681- 1681x …………………………………………..… 6, 7

Fair Debt Collection Practices Act,
15 U.S.C. §§ 1692-1692p ……………………….……………… *passim*

California Fair Debt Collection Practices Act (the Rosenthal Act),
Cal. Civ.Code § 1788 ……….…………………………………….. *passim*

Iowa Debt Collection Practices Act,
Iowa Code § 537.5108(7) ………………………………………........ 41

**Other Authorities**

36 Am. Jur. 2d *Forfeitures and Penalties* § 62 (2001) ………………...… 40

Cass, FTC Informal Staff Letter (Dec. 23, 1997),
*available at* http://www.ftc.gov/os/statutes/fdcpa/letters/cass.htm ............. 23

FTC Statements of General Policy or Interpretation Staff Commentary
on the Fair Debt Collection Practices Act,
53 Fed. Reg. 50097-50110 (Dec. 13, 1988) ……………………………… 20

Hursh, Annotation, *Recovery of Cumulative Statutory Penalties*,
71 A.L.R.2d 986, § 3 (1960) …………….……………………………….. 40

Wu and De Armond, National Consumer Law Center,
Fair Credit Reporting §§ 2.5-2.7 (6th ed.2010) ……………………….…… 6

# I. ISSUES PRESENTED FOR REVIEW

1) Whether the district court correctly held that Arrow's unexplained conditional threats to report obsolete debts to credit bureaus were false or deceptive where Arrow admitted that a) it never intended to report the debts to a credit bureau, b) it had "flagged" the debts in its own system as unreportable, c) it knew that the debts were obsolete under applicable federal credit reporting law, and d) its own policies and procedures prohibited it from reporting the debts to a credit bureau.


2) Whether the district court properly allowed the jury to award statutory class action damages under the California Rosenthal Act, in addition to statutory damages under the federal Fair Debt Collection Practices Act (FDCPA), where the Rosenthal Act states that "[t]he remedies provided herein are intended to be cumulative and are in addition to any other procedures, rights, or remedies under any other provision of law."

## II. ARGUMENT OF LAW

### A. SUMMARY OF ARGUMENT

**The District Court Properly Entered Summary Judgment Holding Arrow Liable For Its False Or Deceptive Representations That Known Obsolete Debts Were Subject To Credit Reporting**

In a twelve month period in 2004-05 Defendant-Appellant Arrow Financial Services (Arrow) sent some 40,000 California consumers dunning letters offering a reduced pay-off to settle a portfolio of obsolete health club debts. Arrow knew when it obtained these accounts as well as when it sent the collection letters that, because of their age, applicable credit reporting law barred these debts from being included in the consumers' credit reports. Accordingly, Arrow had no intention of reporting these debts, had already "flagged" them as unreportable, and never reported a single one of the accounts to any credit bureau. Nevertheless, each dun contained two separate references to reporting the debts to credit bureaus, including the following sentence: "Upon receipt of the settlement amount and clearance of funds, and if we are reporting the account, the appropriate credit bureau will be notified that this account has been settled."

The district court correctly found that Arrow's explicit references to credit reporting and credit bureaus under these circumstances violated the

2

FDCPA's strict prohibition barring a debt collector from using any false, deceptive, or misleading representations while collecting a debt. The court applied the FDCPA's prevailing least sophisticated consumer standard and concluded that unsophisticated debtors would naturally understand Arrow to be saying that their debts could be reported to a credit bureau, may actually already have been reported, and may thereafter be reported. Since each one of these three messages is indisputably false, the court entered summary judgment establishing liability.

Arrow's current argument that the conditional nature of its misrepresentations should relieve it from the consequences of the resulting deception is the antithesis of the established rule of law. With no supporting authority, Arrow simply contends that a debt collector should be free to intimidate and deceive vulnerable consumers so long as it couches its false claims or threats in conditional terms. The federal courts uniformly reject this argument. Any such unexplained conditional statement naturally implies that the condition may be true or applicable. Thus, a debt collector violates the law when, as here, the stated condition is itself false and has no relevance to the consumer to whom the dun is directed. Congress enacted the FDCPA expressly to eliminate all false and deceptive practices in the

debt collection industry, and Arrow's wish to be relieved from this crucial constraint must be rejected.

**The District Court Correctly Applied Explicit California And Federal Law That Rosenthal Act Remedies And FDCPA Remedies Are Cumulative**

Arrow's complaint that the lower court erred by permitting the jury to award statutory class action damages under both the California Fair Debt Collection Practices Act, Cal. Civ.Code § 1788 (the Rosenthal Act), and the FDCPA is precluded by the plain language of both statutes. The FDCPA contains an express savings provision that disclaims any preemption of "the laws of any State with respect to debt collection practices," except for a narrow class of inconsistent laws that no one, including Arrow, claims applies to the Rosenthal Act.

The Rosenthal Act contains an unambiguous statement that is conclusive on this point: "The remedies provided herein are intended to be cumulative and are in addition to any other procedures, rights, or remedies under any other provision of law." Cal. Civ.Code § 1788.32. The district court's ruling is consequently as cogent and succinct as it is unassailable: "The Court finds that the clear language of the statutes provide for recovery under both FDCPA and CA FDCPA." ER 42.

4

Arrow's disagreement with the district court is not only insubstantial but actually reaffirms the court's holding. Arrow argues that because this dispositive § 1788.32 cumulative remedy language was an existing part of the Rosenthal Act in 1999 when the California Legislature enacted the amendment importing the federal FDCPA and its class action remedy, the Legislature did not intend that § 1788.32 apply to the amendment. However, established rules of statutory construction command the opposite conclusion: the Legislature is always aware of the contents of the law it is amending and acts in light thereof. Thus, Arrow's attempt to find ambiguity or conflict in the legislative process highlights that the dispositive § 1788.32 language applies *a fortiori* to the 1999 amendment.

Finally, Arrow asserts that cumulative federal and state statutory penalties offend the rule against awarding duplicative damages. However, the rule against double recovery on which Arrow relies is limited to compensatory damages. FDCPA and Rosenthal Act class action damages by definition serve as punishment and not compensation. Arrow's contention fails on its own terms.

**B. The District Court Properly Entered Summary Judgment Establishing Arrow's Liability For Falsely Or Deceptively Implying That It Might Report Known Obsolete Debts To A Credit Bureau**

> **1. Arrow Knew That Federal Law Prohibited Credit Reporting These Specific Debts And That The Offending Language Was Inapplicable To The Recipients**

The Fair Credit Reporting Act, 15 U.S.C. §§ 1681- 1681x (FCRA), establishes the framework for analyzing the illegality and falsity of Arrow's representations.  This Court has summarized the controlling FCRA rules applicable here to reporting obsolete debts by a consumer reporting agency (CRA), commonly known as a credit bureau:[1]

> The FCRA limits the length of time that a CRA is permitted to report an adverse item of information. Generally, bankruptcies may be reported for ten years; all other negative information can remain on a report for up to seven years. 15 U.S.C. § 1681c(a). Older items are referred to as "obsolete."

*F.T.C. v. Gill*, 265 F.3d 944, 948 (9th Cir. 2001).

Arrow purchased the subject portfolio of health club debts in 2002. Dk. 97, Para. nos. 11 and 12.  The accompanying information that Arrow

---

[1] "Consumer reporting agency" is the formal term defined in 15 U.S.C. § 1681a(f) that covers a group of FCRA regulated entities that include the well-known Big Three "credit bureaus" [Equifax, TransUnion, and Experian], "the paradigmatic CRAs."  *Payne v. Trans Union, LLC*, 2010 WL 1254298, *3 (E.D.Pa. March 30, 2010).  In contrast, "specialty bureaus" that generally serve non-consumer credit industry clients comprise the largest remaining group of other core consumer reporting agencies.  *See* 15 U.S.C. § 1681a(w); *see generally* Wu and De Armond, National Consumer Law Center, Fair Credit Reporting §§ 2.5-2.7 (7th ed.2010) (surveying the range of qualifying consumer reporting agencies).

received disclosed the charge-off dates of the debts, and Arrow thus knew that each debt was more than seven years old.  *Id.* at nos. 13 and 18.[2]  Mr. Gonzales's debt, for example, was thirteen years old.  *Id.* at no. 16.  Since it claimed to maintain an FCRA compliant policy of not reporting any debt more than seven years old, Arrow readily made the key admission below that created its liability for violating the FDCPA: it had no intention of reporting any of these debts to any credit bureau at any time, including when it sent the duns to Mr. Gonzales and the 39,728 class members.  *Id.* at nos. 20, 28, and 29; *see also,* Appellant's Brief 6 n.8.

Despite this knowledge and intent, each dun promised that "[u]pon receipt of the settlement amount and clearance of funds, and if we are reporting the account, the appropriate credit bureau will be notified that this account has been settled;" then in the space where consumers were directed to indicate that they accepted Arrow's settlement terms appeared the following sentence: "After my funds clear, you will notify the appropriate credit bureaus of this settlement if you are reporting the account."  ER 87 and 89.  Arrow did not report any of these debts to a credit bureau and does not contend that it was permitted or that it intended to report these debts to a CRA.

---

[2] The charge-off date was the date that commenced the calculation of the FCRA obsolescence period.  15 U.S.C. § 1681c(c)(1).

Remarkably, Arrow actually went to the effort of internally "flagging" the Bally's debts as unreportable. *Id.* at no. 29. Yet, it still sent these mass mailed, targeted duns – each with two separate, explicit, and focused references to reporting the debts to credit bureaus – to an entire group of debtors for whom it knew the offending language had no application. Even now Arrow cannot explain why it would have legitimately refused to act on the information that it had already flagged, nor does it defend its deliberate choice to notify these consumers of their imaginary right to have their credit reports updated. *Cf. Floersheim v. F.T.C.*, 411 F.2d 874, 877 (9th Cir.1969) (affirming FTC cease and desist order against debt collector whose "'sole purpose of including this catalog of creditors' rights is to intimidate and deceive the debtor, rather than to inform him of the legal rights of his creditor'").

### 2. The FDCPA Strictly Prohibits Debt Collectors From Making Any False, Deceptive, Or Misleading Statements While Collecting A Debt

"The Fair Debt Collection Practices Act is an extraordinarily broad statute. Congress addressed itself to what it considered to be a widespread problem, and to remedy that problem it crafted a broad statute." *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992). Congress acted with the "express purpose to eliminate abusive debt collection practices by debt

8

collectors, and to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, __ U.S. __, __, 130 S.Ct. 1605, 1623 (2010) (internal quotes and ellipsis omitted). Particularly pertinent here is Congress's formal finding that "[m]eans other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts." 15 U.S.C. § 1692(c).

Congress therefore adopted § 1692e, the operative provision here that Arrow violated and that illustrates the FDCPA's breadth with its unqualified following dictate:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

This prohibition is then followed by sixteen specific violations which this Court has held are "a non-exhaustive list of examples of proscribed conduct." *Fox v. Citicorp Credit Services, Inc*., 15 F.3d 1507, 1516 (9th Cir. 1994). Included among these examples of unlawful conduct are the two that the district court held that Arrow violated:

> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

****

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Section 1692e's absolute prohibition against any misleading representations without regard to the collector's knowledge or intent forms the basis for the FDCPA's imposition of "strict liability." *Reichert v. National Credit Systems, Inc.*, 531 F.3d 1002, 1005-06 (9th Cir. 2008), quoting *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1177 (9th Cir. 2006). This strict liability is subject to the statute's "narrow exception" recited in its affirmative bona fide error defense. *Id.; see Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, *supra,* 130 S.Ct. at 1611-12 (holding that the FDCPA bona fide error defense excludes legal errors). Significantly, Arrow stipulated below that it was not claiming a bona fide error and expressly eschewed any reliance on this affirmative defense. Dk. 224, pp. 22-23.

### 3. The "Credit Bureau" Letters Are Deceptive Since They Would Naturally Lead Least Sophisticated Consumers To Falsely Believe That Their Debts Could Be, May Have Been, Or Would Be Reported To A Credit Bureau

Courts in this Circuit have been instructed that they "shall find a violation of Section 1692e if [the collector's communication is] likely to deceive or mislead a hypothetical 'least sophisticated debtor.'" *Wade v.*

10

*Regional Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996).[3]  The standard is
an "objective" one that "is 'lower than simply examining whether particular
language would deceive or mislead a reasonable debtor.'"  *Terran v. Kaplan*,
109 F.3d 1428, 1431-32 (9th Cir. 1997), quoting *Swanson v. Southern
Oregon Credit Service, Inc*., 869 F.2d 1222, 1227 (9th Cir. 1988).  As
explained by Judge Cabranes in the seminal Second Circuit case, "The basic
purpose of the least-sophisticated-consumer standard is to ensure that the
FDCPA protects all consumers, the gullible as well as the shrewd."  *Clomon
v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993).  Thus, Judge Easterbrook
has instructed that "[u]nsophisticated readers may require more explanation
than do federal judges; what seems pellucid to a judge, a legally
sophisticated reader, may be opaque to someone whose formal education
ended after sixth grade."  *Johnson v. Revenue Management Corp*., 169 F.3d
1057, 1060 (7th Cir. 1999).

---

[3] As other courts, this Court has employed the terms "least sophisticated
consumer" and "least sophisticated debtor" interchangeably [*see e.g.
Donohue v. Quick Collect, Inc*., 592 F.3d 1027, 1033 (9th Cir. 2010)], a
difference that, when examined, has been determined to be of no legal
consequence.  *Brown v. Card Service Center*, 464 F.3d 450, 453 n.1 (3rd
Cir. 2006); *see also Graziano v. Harrison*, 950 F.2d 107, 111 n.5 (3rd Cir.
1991) (acknowledging the "least sophisticated debtor" "usage" but
recognizing that "least sophisticated consumer" would be "a more
appropriate phrase" in view of FDCPA terminology).

In this Circuit, "the issue of whether the language of a collection letter violates the FDCPA is a matter of law." *Hapin v. Arrow Financial Services,* 428 F.Supp.2d 1057, 1060 (N.D.Cal. 2006), citing *Terran v. Kaplan,* 109 F.3d at 1431-32 (whether the dun would "mislead or confuse a least sophisticated debtor" was "a question of law that we review *de novo*"). Whether a debt collector has engaged in such misrepresentation "is therefore an excellent candidate for summary judgment, as only pure questions of law are presented." *Valdez v. Hunt And Henriques*, 2002 WL 433595, *2 (N.D.Cal. March 19, 2002).

The district court followed this Court's directive when it entered summary judgment holding that Arrow violated §§ 1692e(5) and (10).  The lower court found that "the least sophisticated debtor would interpret the language in the letters as implying that the status of the debt may have already been or may, at some later date, be submitted to the credit bureaus" and "could likely believe his debt is reportable just because the letters indicate the credit bureaus will be notified." ER 68-69, 71-72.  Since the uncontroverted evidence – indeed Arrow's own admissions – established that each statement was false, the district court was required to enter summary judgment establishing Arrow's liability, as it did.  ER 78.  *See e.g. Baker v. G.C. Services Corp.,* 677 F.2d 775, 778-79 (9th Cir. 1982)

12

(affirming § 1692e(5) violation where collector's dun "created the impression that legal action…[was] a real possibility" yet the collector 's policy "was not to take legal action in these types of cases). [4]

Arrow makes no attempt to refute the lower court's conclusion that its references to credit reporting (as any unexplained conditional formulation) naturally imply to the least sophisticated consumer that reporting the debts to a credit bureau was a possibility. Instead, Arrow's objection to the district court's reading of the duns narrowly focuses on the conditional structure of the offending sentences: "if we are reporting the account" and "if you are reporting the account." ER 87 and 89. The essence of Arrow's argument, variously repeated in its Brief, is the following: "the District Court's reading of this conditional phrase…[was] not reasonable [because a] reasonable reader, albeit an unsophisticated one, reading with care would find nothing in the phrase from which to infer what Arrow might do with an account it was not reporting." Appellant's Brief 18. This argument, however, does not undermine the district court's ruling; to the contrary, it explains why the duns are deceptive and why the federal courts have developed FDCPA jurisprudence that prevents debt collectors from artfully misleading

---

[4] Arrow limited its arguments below regarding its liability under the Rosenthal Act to those addressing the FDCPA, and the district court therefore entered summary judgment on the state law claim as well. ER 72; *see* Appellant's Brief 10 n.9.

vulnerable and naïve debtors under the guise of literal truth, as Arrow did here.

Unquestionably Arrow is correct that an unsophisticated consumer (or even a reasonable consumer) could and would not know "what Arrow might do with an account it was not reporting." But it is precisely because the duns are silent on whether Arrow was reporting the accounts and the critical alternative of what might be the case if the debts were not being reported that unsophisticated consumers would naturally infer – erroneously of course here – that there must be some possibility that Arrow was reporting their accounts to credit bureaus. After all, it would otherwise be nonsensical to state in a personally directed letter what will happen in the future in the case of an event that did not, will not, could not, and was not intended to occur.

Rather than excusing the resulting deception, Arrow's silence here defines it. Its conditional references to credit reporting illustrate why and when unsophisticated readers require an "explanation," as noted in *Johnson v. Revenue Management Corp.*, 169 F.3d at 1060. The lower court here reached this very conclusion when it found the credit bureau "language misleading or deceptive because" the duns are devoid of "any explanation detailing what debts are likely to be reported or even if the subject debt is one that is reportable." ER 65 n.1.

FDCPA caselaw is replete with examples where silence produces the kind of unlawful confusion and deception which Arrow created here. One example is this Court's own opinion in *Swanson v. Southern Oregon Credit Service, Inc*., *supra*. This Court rejected the collector's contention that its unexplained and unqualified threat that in 48 hours it would make "a complete investigation concerning your employment" would actually be limited to obtaining from the employer only permissible "location information" [*see* 15 U.S.C. §§ 1692a(7), 1692b, and 1692c(b)]; this Court held instead that the least sophisticated consumer "would associate the threat…with an embarrassing inquiry with his employer concerning the debt, concerning his performance as an employee, and concerning his job security." 869 F.2d at 1228. The reasoning in *Swanson*, and particularly this Court's admonition to debt collectors to explain themselves when necessary to avoid misleading unsophisticated readers, is particularly applicable here:

> The phrase "complete investigation" connotes something more than simply obtaining permissible location information. If Southern Oregon merely meant to state that after 48 hours it would begin to seek permissible location information, the notice should have so stated. "'[O]ne who deliberately goes perilously close to an area of proscribed conduct [takes] the risk that he may cross the line.'" *FTC v. Colgate-Palmolive Co.,* 380 U.S. 374, 393, 85 S.Ct. 1035, 1047, 13 L.Ed.2d 904 (1965), *quoting Boyce Motor Lines, Inc. v. United States,* 342 U.S. 337, 340, 72 S.Ct. 329, 331, 96 L.Ed. 367 (1952). Southern Oregon crossed the line.

*Id.; see also Fields v. Wilber Law Firm, P.C*., 383 F.3d 562, 566 (7th Cir. 2004) (reversing dismissal of the consumer's FDCPA claim that the collector's tripling the debt with the addition of unexplained collection fees would mislead unsophisticated consumers as to "the true character of the debt" and rejecting the lower court's rationale that the consumer "could telephone [the collector] and ask for an explanation"); *cf. Resort Car Rental System, Inc. v. F. T. C*., 518 F.2d 962, 964 (9th Cir. 1975) ("the public is not under any duty to make reasonable inquiry into the truth of advertising" under the Federal Trade Commission Act).

The narrowness of Arrow's argument that the offending language is literally true only serves to emphasize that Congress wrote § 1692e in the disjunctive to bar debt collectors from using "any false" as well as any "deceptive or misleading representation or means."  If a literal truth versus literal falsity inquiry were the sole measure of a § 1692e violation, then Congress's inclusion of the additional language barring deceptive or misleading representations would be impermissibly superfluous.  *See e.g. Clark  v. Capital Credit & Collection Services, Inc*., 460 F.3d at 1176, quoting *Security Pac. Nat'l Bank v. Resolution Tr. Corp.,* 63 F.3d 900, 904 (9th Cir.1995) ("We must avoid a construction which renders any language of the enactment superfluous").

Arrow's argument that literal truth insulates it from liability is directly contrary to this Court's longstanding view that deception exists even though the communication "does not state false facts." *Simeon Management Corp. v. F. T. C.*, 579 F.2d 1137, 1145 (9th Cir. 1978) (affirming deception under the Federal Trade Commission Act). The adoption of the least sophisticated consumer standard built on this FTC Act precedent, as shown in this Court's first FDCPA case. *Baker v. G.C. Servs. Corp.,* 677 F.2d at 778 (following the "directive" of the FTC Act that "[i]n evaluating the tendency of language to deceive, the Commission should look not to the most sophisticated readers but to the least") (citation and quotation omitted); *see also Jeter v. Credit Bureau, Inc*., 760 F.2d 1168, 1172-75 (11th Cir. 1985) ("prior to the passage of the FDCPA, the FTC had protected unsophisticated consumers from debt collection practices which have a tendency or capacity to deceive"); *Clomon v. Jackson*, 988 F.2d at 1318 ("This standard is consistent with the norms that courts have traditionally applied in consumer-protection law"). Arrow would have this Court not only ignore the plain statutory language and the controlling least sophisticated consumer standard but also reverse decades of federal consumer protection jurisprudence.

Illustrating the application of these principles in the context of Arrow's unexplained conditional statement and otherwise supporting the

district court's ruling is the Third Circuit opinion in *Brown v. Card Service Center, supra*.  The district court in *Brown* had dismissed for failure to state a claim under § 1692e a complaint based on the collector's statement that "refusal to cooperate could result in a legal suit being filed" and "could result in our forwarding this account to our attorney."  464 F.3d at 451-52. The consumer had alleged that the statements were false and misleading because the collector (CSC) in fact had no intention of taking such action; nevertheless, the lower court agreed with the collector that it had said nothing that as a matter of law was false or misleading:

> In reaching this conclusion, the District Court emphasized that the CSC Letter employed the conditional term "could" as opposed to the affirmative term "will"….The District Court found the CSC Letter in compliance with the FDCPA because it merely stated what CSC *could* do, if it so chose.

464 F.3d at 454-55 (emphasis in original).

The Third Circuit reversed "because we conclude that it would be deceptive under the FDCPA for CSC to assert that it *could* take an action that it had no intention of taking and has never or very rarely taken before." 464 F.3d at 455 (emphasis in original).  Just as the district court here properly rejected Arrow's proposition that it give automatic and conclusive effect to the literal truth of its conditional credit reporting statement, the Third Circuit also rejected the same argument in the context of litigation.

The Third Circuit discounted the statement's literal truth for the simple and decisive reason that the least sophisticated consumer reading the CSC dun "might get the impression that litigation or referral to a CSC lawyer would" occur under the stated conditions. *Id*.

The Third Circuit cited two separate FDCPA tenets that support its ruling and further confirm the district court's ruling here. First, federal courts have developed "as a useful tool in analyzing the 'least-sophisticated-consumer' test" for a § 1692e violation the "'more than one reasonable interpretation' standard." *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 441 (6th Cir. 2008). This test holds that a "debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Brown v. Card Service Center*, 464 F.3d at 455 (internal quote and citation omitted); *see also Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996) (same). The Third Circuit applied the "more than one reasonable interpretation" test and concluded that the conditional statement under review would be deceptive if the plaintiff could prove that what the collector stated "could" happen in fact "seldom" occurred. 464 F.3d at 455. The Third Circuit's use of the "more than one reasonable interpretation" test to determine deception in an unexplained conditional statement is equally befitting here and establishes

19

Arrow's violation since Arrow has conceded the complete inapplicability of its extraneous conditional credit reporting references.

For additional support the Third Circuit in *Brown* [464 F.3d at 455-56] also relied on the FTC's FDCPA Staff Commentary, which provides the following specific guidance to debt collectors who make statements of conditional action:

> A debt collector may <u>not</u> state or <u>imply that he</u> or any third party <u>may take any action unless such action is legal and there is a reasonable likelihood, at the time the statement is made, that such action will be taken.</u> A debt collector may state that certain action is possible, if it is true that such action is legal and is frequently taken by the collector or creditor with respect to similar debts; however, <u>if the debt collector has reason to know there are facts that make the action unlikely in the particular case, a statement that the action was possible would be misleading.</u>

FTC Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097-50110, § 807(5)-3, at 50106 (Dec. 13, 1988) (emphasis added).

This admonition conclusively defines Arrow's misconduct here since Arrow's admission that it knew that the age of the debts in the health club portfolio meant that under no circumstances would it report these debts to a credit bureau goes well beyond the FTC's threshold that to be unlawfully misleading the conditional action must be simply "unlikely." *See also LeBlanc v. Unifund CCR Partners,* 601 F3d 1185, 1190 n.9 (11th Cir. 2010)

20

("if a debt collector cannot bring suit for any reason, it should not represent to the consumer, even implicitly, that it will sue," citing this FTC Commentary section); *compare Lucero v. The CBE Group, Inc.*, 2010 WL 3894043, * 4 (N.D.Ill. Sept. 29, 2010) (applying the FTC Commentary standard to deny the collector summary judgment regarding recited "possible" legal actions).

This Court's established jurisprudence protecting consumers from deceptive practices under the FDCPA and otherwise, caselaw exemplified by the Third Circuit's *Brown* opinion, the FTC Commentary's illustration of deception squarely describing and condemning Arrow's misconduct here, and prevailing FDCPA principles adopted by every circuit court in the country all dramatically compel affirmance of the ruling below. Even the common law would command this result. *See e.g. Smith v. Duffey*, 576 F.3d 336, 338 (7th Cir. 2009) (the common law imposes a "duty of candor" and disclosure even "in the absence of any special relationship…just because the defendant's silence would mislead the plaintiff because of something else that the defendant had said"). Arrow has no answer to these authorities or their logic. Instead, it supports its otherwise unsupported arguments about silence and literal truth by reciting general principles out of context and

invoking inapposite cases whose only connection here is that they involve a claim of a § 1692e(5) or § 1692e(10) violation.

For example, Arrow relies extensively on the opinion in *Barany-Snyder v. Weiner*, 539 F.3d 327 (6th Cir. 2008), which it argues is "more to the point." Appellant's Brief 20-21. The plaintiff there presented the seemingly frivolous claim that the routine action of attaching to a state court collection complaint the underlying consumer contract, which in that case contained "buried" within it an attorney's fees provision that was never invoked, unlawfully threatened to collect fees that were prohibited under applicable state law. 539 F.3d 333-35. The collection "complaint itself, however, did not seek attorney's fees;" the state "court did not award the [creditor] attorney's fees;" and the creditor "did not seek or request such an award." *Id.* at 331. The Sixth Circuit affirmed under those circumstances the dismissal of the lawsuit against the creditor's attorney who filed the contract, finding no colorable § 1692e(5) or § 1692e(10) violation. *Id.* at 335.

It is telling that Arrow relies so heavily on *Barany-Snyder*, since that case provides it no support whatsoever. Indeed, the Sixth Circuit stated that had the fee provision there been "highlight[ed] for the consumer's attention" rather than "buried in a lengthy contract," it might well "be misconstrued by

22

the least sophisticated consumer as a threat to collect attorney's fees." *Id*. at 334. To the extent that *Barany-Snyder* is "to the point" in this case, it would be the contrasting fact that Arrow deliberately highlighted its false credit reporting gambit by making it a prominent, repeated focus of the dunning letters. The body of the form duns here contains only 10 full sentences, and two of them are the vehicles that Arrow used to make the false reference to credit reporting. The only topic in the duns that Arrow emphasized more than credit reporting is payment.

Arrow's decision to send this credit bureau form dun was no doubt made knowing the bond between debt collection and credit reporting and in reliance on the truism that credit reporting is a "powerful tool designed, in part, to wrench compliance with payment terms." *Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993); *see also* Cass, FTC Informal Staff Letter (Dec. 23, 1997) ("the reality is that debt collectors use the reporting mechanism as a tool to persuade consumers to pay, just like dunning letters and telephone calls"), *available at* http://www.ftc.gov/os/statutes/fdcpa/letters/cass.htm.[5] Certainly Congress

---

[5] The fact that credit reporting is an effective tool in the debt collection industry is illustrated by the frequency that it is invoked. For example, the dun reviewed in *Swanson* emphasized that "*A GOOD CREDIT RATING-IS YOUR MOST VALUABLE ASSET.*" 869 F.2d at 1225; *see also, Wade v. Regional Credit Ass'n*., 87 F.3d at 1099 ("If not paid TODAY, it may STOP

was aware of that connection when it recited among § 1692e's sixteen

examples of deceptive and false representations two violations that further

illustrate the leverage that debt collectors can exert by playing the credit

reporting card.[6]

Undeniable proof that Arrow was aware of this debt collection/credit

reporting connection and of the ploy that it sought to use here is the fact that

almost one year before it sent these duns a federal district court in Chicago

---

YOU FROM OBTAINING credit TOMORROW.  PROTECT YOUR CREDIT REPUTATION.  SEND PAYMENT TODAY....DO NOT DISREGARD THIS NOTICE. YOUR CREDIT MAY BE ADVERSELY AFFECTED. CONTACT US IMMEDIATELY").  The efficacy of credit reporting in debt collection of course does not preclude a collector from invoking it but only underscores that a collector's deception involving credit reporting is a highly material misrepresentation that is particularly pernicious when misused as here.

[6] One example is the prohibition against impersonating a CRA contained in § 1692e(16):  "The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 1681a(f) of this title."  *See McKenzie v. E.A. Uffman and Associates, Inc.*, 119 F.3d 358, 360-62 (5th Cir.1997).  The other is § 1692e(8) that assures that debt collectors, whenever permitted to communicate credit information to any other entity, report only accurate and complete information: "(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."  Section 1692e(8) is regularly applied in the credit reporting context.  *See e.g. Wilhelm v. Credico, Inc*., 519 F.3d 416, 417-18 (8th Cir. 2008); *Purnell v. Arrow Financial Services, LLC*, 303 Fed.Appx. 297, 2008 WL 5235827 (6th Cir. 2008); *Quale v. Unifund CCR Partners*, 682 F.Supp.2d 1274, 1279-80 (S.D.Ala. 2010).  The FDCPA also contains an express exception to its unlawful third party communication rule that allows debt collectors to conduct their legitimate business with "a consumer reporting agency" to the extent "otherwise permitted by law."  15 U.S.C. § 1692c(b).

sustained a claim of deception against Arrow because it sent a consumer a dun to collect an obsolete debt promising upon payment that "the appropriate credit bureaus will be notified that this account has been settled." *Redd v. Arrow Financial,* Civil Case No. 03C1341, Doc. # 27 at 2 (N.D.Ill. July 23, 2003). The court below quoted from *Redd* the following ruling that it found "persuasive" in reaching its own decision:

> The plaintiffs allege that the defendant's statement that, if they paid money on account of the debt, credit bureaus would be notified is misleading in that it suggests to the unsophisticated consumer that a credit bureau could report the payment, when that is not currently permissible under the law... [I]t is clear that the letter could be construed as deceptive, misleading or false under the FDCPA.

ER 71-72 n.3.[7]

Perhaps the most significant aspect of *Redd* is that the ruling put Arrow on notice of its peril for using a credit bureau dun to collect known obsolete debts, yet Arrow nevertheless decided to use the form duns to collect the health club portfolio knowing that it was collecting only obsolete debts and had flagged each one of these debts as unreportable. Indeed, Arrow embellished the form dun it had earlier used in *Redd* with the current conditional formulation despite knowing that the condition had no relevance or application to the obsolete debts here and that the FTC had directed debt

---

[7] The entirety of the July 23, 2003 Order issued in *Redd* is copied in full at Dk. 8, Ex. N.

collectors years earlier in its Commentary not to make a conditional representation "if the debt collector has reason to know there are facts that make the action unlikely." This Court's conclusion in *Swanson* that the collector there had "crossed the line" that "one who deliberately goes perilously close to an area of proscribed conduct takes the risk" of crossing [869 F.2d at 1228] is even more apt here where Arrow intentionally decided to persist in its use of its credit bureau duns in the face of the *Redd* ruling and the array of federal authority aligned against it.

Arrow accuses the lower court of engaging in a "bizarre" and "imagined" reading of the duns here. Appellant's Brief 22. However, the district court's natural and reasonable reading of these duns and its faithful application of the least sophisticated consumer standard is hardly bizarre or imagined. What is truly bizarre is Arrow's core contention here that its conditional threat, otherwise completely silent regarding the circumstances or any other aspect that might explain the fulfillment of the condition, could and should be reasonably construed to exclude that stated condition as even a possibility.[8]

---

[8] The district court also rejected Arrow's defense that Mr. Gonzales himself was not deceived by the credit reporting threat because he personally knew from his prior work in the consumer finance industry of the seven year FCRA limitation. ER 63-66. The district court recognized Mr. Gonzales as in fact a completely knowledgeable consumer, even "more sophisticated

**C. The Lower Court Correctly Allowed The Jury To Award Cumulative Statutory Class Action Damages Under Both The FDCPA And The Rosenthal Act**

### 1. The FDCPA And The Rosenthal Act Each Expressly Permit Cumulative Class Action Statutory Damages

The district court applied the plain, unambiguous language of both the FDCPA and the Rosenthal Act to allow the jury to award cumulative statutory class action damages. Both the FDCPA and the Rosenthal Act specifically allow and in fact encourage cumulative class action statutory damages. The district correctly applied these dispositive provisions, and Arrow has articulated no valid reason to justify ignoring them.

The FDCPA provides for the award of statutory damages up to "$500,000 or 1 per centum of the net worth of the debt collector" in any successful class action:

**(a) Amount of damages**

---

than a reasonable debtor." Dk. 225, p. 285. Arrow's continuing campaign to focus attention on these immaterial facts [Appellant's Brief 6-7] only emphasizes that Mr. Gonzales's service here has been exemplary, doing exactly as Congress envisioned when it drafted the "FDCPA enlist[ing] the efforts of sophisticated consumers like [the plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts." *Jacobson v. Healthcare Financial Services, Inc.,* 516 F.3d 85, 91 (2d Cir. 2008) (internal footnote omitted). Given the arcane legal basis of the deception here, without Mr. Gonzales's intervention Arrow's misconduct no doubt would have continued undetected and uncurtailed.

Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

**\*\*\*\***

**(2)(B)** in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector;

**\*\*\*\***

**(b) Factors considered by court**

In determining the amount of liability in any action under subsection (a) of this section, the court shall consider, among other relevant factors—

**\*\*\***

**(2)** in any class action under subsection (a)(2)(B) of this section, the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional.

15 U.S.C. § 1692k.

The Rosenthal Act provides for the same class action remedy

contained in § 1692k as a result of the California Legislature's incorporation

in 1999 of virtually all of the FDCPA:

Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United

28

States Code. However, subsection (11) of Section 1692e and Section 1692g shall not apply to any person specified in paragraphs (A) and (B) of subsection (6) of Section 1692a of Title 15 of the United States Code or that person's principal. The references to federal codes in this section refer to those codes as they read January 1, 2001.

Cal. Civ.Code § 1788.17; *see Alkan v. Citimortgage, Inc*., 336 F.Supp.2d 1061, 1064-65 (N.D.Cal. 2004) (approving the process and efficacy of adopting § 1788.17 whereby "California simply incorporated by reference the text of certain federal provisions into the CFDCPA, rather than copying them verbatim into the California code").

The Rosenthal Act specifically addresses the cumulative remedy issue now presented here with the following unequivocal and controlling statement of law:

> The remedies provided herein are intended to be cumulative and are in addition to any other procedures, rights, or remedies under any other provision of law.

Cal. Civ.Code § 1788.32.

The FDCPA provision concerning this cumulative remedy issue states in full as follows:

> This subchapter does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency. For purposes of this section, a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter.

29

15 U.S.C. § 1692n.

The Rosenthal Act is not such an inconsistent law, *Pirouzian v. SLM Corp.*, 396 F.Supp.2d 1124, 1130-31 (S.D.Cal. 2005); *Sanchez v. Client Services, Inc.*, 520 F.Supp.2d 1149, 1163 n.5 (N.D.Cal. 2007), and Arrow does not argue otherwise.

In the face of these statutory provisions squarely on point, the lower court denied Arrow's motion in limine claiming that the award of class action statutory damages under both the FDCPA and the Rosenthal Act were unlawfully duplicative.  Dks. 135, 136, and 146.  The lower court granted Mr. Gonzales's countermotion in limine to permit cumulative remedies, issuing the following ruling from which Arrow appeals:

> With respect to the cumulative or double recovery, Plaintiff moves in limine to permit recovery under both FDCPA and CA FDCPA, and Defendant moves in limine to preclude the class from recovering under both statutes.  The Court finds that the clear language of the statutes provide for recovery under both FDCPA and CA FDCPA.
>
> Defendant's contention that the cumulative recovery is allowed in only individual actions is not supported by a plain interpretation of the statutes.  As such, Plaintiff shall be permitted to seek statutory damages under both statutes.
>
> Plaintiff's motion in limine is granted.  Defendant's motion in limine is denied.

With respect to double recovery, the Court will provide an instruction similar to the following, and the parties are permitted to provide friendly amendments during the jury instruction conference:

A separate violation is charged against the defendant in each cause of action. You are to consider damages as to each cause of action separately. Your verdict on damages on one cause of action should not control your verdict on damages as to the other cause of action.

The Court will also consider a special verdict form for the jury, to lay out the amount of damages as to each cause of action.

ER 42-43.

Arrow's contention that this ruling was in error does not dispute the clarity of the quoted FDCPA and the Rosenthal Act provisions. Instead, Arrow has concocted a phantom conflict within the Rosenthal Act based on one provision, enacted before the 1999 adoption of § 1788.17 incorporating the FDCPA, when the Rosenthal Act permitted only individual and not class actions. That provision, Cal. Civ.Code § 1788.30, does limit Rosenthal Act damages to individual actions but does not otherwise purport to address class actions and omits any reference to cumulative damages at all. The relevant portion of § 1788.30 states:

(a) Any debt collector who violates this title with respect to any debtor shall be liable to that debtor only in an individual action, and his liability therein to that debtor shall be in an amount equal to the sum of any actual damages sustained by the debtor as a result of the violation.

31

(b) Any debt collector who willfully and knowingly violates this title with respect to any debtor shall, in addition to actual damages sustained by the debtor as a result of the violation, also be liable to the debtor only in an individual action, and his additional liability therein to that debtor shall be for a penalty in such amount as the court may allow, which shall not be less than one hundred dollars ($100) nor greater than one thousand dollars ($1,000).

Section 1788.30 states nothing that might support Arrow's claim of a legal conflict with § 1788.17's mandate that debt collectors "shall be subject to the remedies in Section 1692k of Title 15 of the United States Code" and certainly does not conflict with § 1788.32's mandate that available remedies are cumulative. A plain reading of these provisions eliminates Arrow's linchpin assertion of a conflict that it argues must be resolved here.

The only potential conflict is whether the post-amendment Rosenthal Act permits class actions at all. Arrow raised that argument below, and the lower court acknowledged the resulting "ambiguity." Dk. 46, p. 4. However, consistent with the rulings from all other federal courts that have addressed the issue, [9] the lower court rejected that argument. *Id.* at 4-5. Arrow has not appealed from that ruling and therefore has acceded to that decision, which is now the law of this case. *U.S. v. Washington*, 235 F.3d

---

[9] *Palmer v. Stassinos,* 233 F.R.D. 546, 547-48 (N.D.Cal. 2006); *McDonald v. Bonded Collectors, LLC,* 233 F.R.D. 576, 577 (S.D.Cal. 2005); *Abels v. JBC Legal Group, PC,* 227 F.R.D. 541, 548 (N.D.Cal. 2005).

438, 441 (9th Cir. 2000) ("Because this order was not appealed, it remains the law of the case").

Any possible conflict has disappeared now that it is established that class actions are permitted under the Rosenthal Act. Section 1788.30 addresses only individual actions, not class actions, and says nothing about class action remedies, cumulative or otherwise, since the pre-1999 Rosenthal Act did not allow class actions in the first place. Section 1788.32's directive that the "remedies provided herein are intended to be cumulative" stands alone – clear, unambiguous, and unequivocal – as the sole statement from the California Legislature on the topic. The Rosenthal Act could not be clearer on these points.

Arrow's argument to this Court confirms that its basis for claiming a conflict within the Rosenthal Act simply begs the question, now answered, whether class actions are permitted under the Rosenthal Act. Rather than support its claim of a conflict or inconsistency leading to a supposedly prohibited "duplicative recovery," Arrow simply continues to repeat its argument that only individual actions are permitted: "But this [1999] amendment did not repeal or supercede [sic] § 1788.30, which allowed only individual actions. Accordingly there is an internal inconsistency within the Rosenthal Act." Appellant's Brief 26. Arrow then jumps to the fact that the

§ 1788.32 cumulative remedies provision "was written into the statute in 1977 when the only damages possible under the Act were individual damages" and concludes without explanation that this Court should "reconcile these conflicting parts of the Rosenthal Act." *Id.*

Arrow has utterly failed to demonstrate any "conflict" within the Rosenthal Act to support its bare claim of "an internal inconsistency" regarding cumulative class action statutory damages. Arrow is simply attempting to re-argue whether class actions are permitted under the Rosenthal Act. The only conclusion available is the one stated by the lower court: "the clear language of the statutes provide for recovery under both FDCPA and CA FDCPA."

Once analyzed, Arrow's contention is nothing more than the sham argument that the Legislature did not intend that § 1788.32's existing cumulative remedies mandate should apply to the 1999 amendment. Arrow faults the California Legislature because in 1999 it "did not amend § 1788.32, which allowed awards of damages to be 'cumulative' only insofar as they were authorized at the time." Appellant's Brief 30. To the contrary, the opposite rule prevails since, as authoritatively stated by the California Supreme Court, "The Legislature, of course, is deemed to be aware of statutes and judicial decisions already in existence, and to have

34

enacted or amended a statute in light thereof." *People v. Harrison*, 48 Cal.3d 321, 329, 768 P.2d 1078, 1081-82, 256 Cal.Rptr. 401, 405 (Cal. 1989). The Legislature knew and intended as a matter of law in 1999 that its Rosenthal Act class action statutory damages would be cumulative with those available under the FDCPA. Arrow's feeble attempt to create statutory conflict where none exists merely serves to confirm that conclusion.

Arrow cites one unreported opinion, *Mejia v. Marauder Corp.*, 2007 WL 806486 (N.D.Cal. March 15, 2007), an individual case and not a class action, that it claims supports its position. Appellant's Brief 27-28. *Mejia* does nothing of the sort. After entering summary judgment establishing the defendant's liability, the court awarded the consumer $250 in statutory FDCPA damages under § 1692k(a)(2)(A) (individual action statutory damages "not exceeding $1,000") and $100 in Rosenthal Act statutory damages under § 1788.30(b). 2007 WL 806486, *11-12. *Mejia* is just one in the unbroken line of cases giving effect to § 1788.32 and awarding cumulative statutory damages under the FDCPA and the Rosenthal Act in individual cases.[10]

---

[10] *See e.g. Panahiasl v. Gurney*, 2007 WL 738642, *3 and n.4 (N.D.Cal. Mar. 8, 2007); *Costa v. National Action Financial Services*, 634 F.Supp.2d 1069, 1077 (E.D. Cal. 2007); *Bretana v. Int'l Collection Corp.,* 2010 WL

Arrow focuses on one portion of *Mejia,* which is limited to an issue unique to individual actions under the Rosenthal Act, without attempting to explain how it could conceivably trump the dispositive plain language of § 1788.32's cumulative remedies mandate in the context here of a class action.  Significantly, in ruling against the plaintiff on that unique issue – whether an individual plaintiff may recover double statutory damages under the Rosenthal Act alone (plus FDCPA statutory damages) – the *Mejia* court countered the plaintiff's reliance on *Abels v. JBC Legal Group, PC, supra,* because the cited language in *Abels* "was commenting only about the availability of class action (as opposed to individual action) remedies under state law."  2007 WL 806486, *12.  *Mejia* accordingly says nothing to assist Arrow in claiming statutory conflict or inconsistency here and actually reaffirms through the *Abels* discussion its concurrence with the ruling below allowing cumulative class action damages.[11]

---

1221925, *2 (N.D.Cal. March 24, 2010); *Adams v. CIR Law Offices, LLP,* 2007 WL 2481550, *5 (S.D.Cal. Aug. 29, 2007); *Myers v. LHR, Inc.,* 543 F.Supp.2d 1215, 1218 (S.D.Cal. 2008); *Hartung v. J.D.Byrider, Inc.,* 2009 WL 1876690, *10-11 (E.D.Cal. June 26, 2009); *Morisaki v. Davenport, Allen & Malone, Inc.,* 2010 WL 3341566, *3 (E.D.Cal. Aug 23, 2010).

[11] The *Mejia* plaintiff's theory that double statutory damages are available within the Rosenthal Act in an individual action does not even implicate § 1788.32, whose cumulative remedies language applies only to "remedies under any other provision of law," not to cumulating putative multiple statutory damages within the Rosenthal Act itself.  *See Silva v. Jason Head, PLC,* 2010 WL 4593704, *6 (N.D.Cal. Nov. 4, 2010) (dismissing the

Section 1788.32 plainly, directly, and conclusively establishes that cumulative FDCPA and Rosenthal Act statutory damages are available in a class action. Arrow's argument here and its inability to articulate any inconsistency or conflict within this provision or the Rosenthal Act as a whole further vouch for the fact that the California Legislature knew in 1999 that its cumulative remedies mandate applied to the class action remedies that it was then creating.

### 2. The Rule Barring Multiple Awards For The Same Injury Is Applicable Only To Actual Damages And Thus Is Inapplicable Here To The FDCPA and Rosenthal Act Statutory Damages That Serve To Deter And Punish And Not As Compensation

Arrow argues against cumulative statutory damages by invoking the rule that "a plaintiff is not entitled to more than a single recovery for each distinct item of compensable damage." Appellant's Brief 29. As stated by Arrow itself, and confirmed by the cases that Arrow cites in support, this rule is subject to the established limitation that its bar against multiple recoveries pertains only to compensatory damages: "Regardless of the nature or number of legal theories advanced by the plaintiff, he or she is not entitled to more than a single recovery for each distinct item of compensable damage supported by the evidence." *Ambassador Hotel Co., Ltd. v. Wei-Chuan*

---

identical argument as presented in *Mejia* as improperly "permitting [the plaintiff] repetitive, not cumulative, recovery").

37

*Investment*, 189 F.3d 1017, 1032 (9th Cir. 1999), quoting *Tavaglione v.*

*Billings,* 4 Cal.4th 1150, 1158-59, 17 Cal.Rptr.2d 608, 847 P.2d 574 (1993);

"[A] plaintiff is not entitled to a separate compensatory damage award under

each legal theory." *Clappier v. Flynn*, 605 F.2d 519, 529 (10th Cir. 1979);

*see also Hammond v. County of Madera*, 859 F.2d 797, 803 n.2 (9th Cir.

1988) ("Since appellants already have been awarded compensatory damages

on their trespass action, no actual damages should be awarded to appellants

for their section 1983 claim").

    In contrast to actual damages, the factors to be considered in

determining the amount of statutory damages address culpability and include

"the frequency and persistence of noncompliance by the debt collector, the

nature of such noncompliance, the resources of the debt collector, the

number of persons adversely affected, and the extent to which the debt

collector's noncompliance was intentional." 15 U.S.C. § 1692k(b)(2).[12]  For

these reasons and others, all courts agree that the FDCPA statutory damages

are not compensatory or actual damages but instead constitute a "penalty" or

a form of "punitive" damages. *See e.g. Johnson v. Eaton*, 80 F.3d 148,

_____

[12] Section 1692k(a)'s use of the conjunctive "and" permits the award of both
actual and statutory damages.  *Baker v. G.C. Services Corp.,* 677 F.2d at
780 ("The statute clearly specifies the total damage award as the sum of the
separate amounts of actual damages, statutory damages and attorney fees").
Furthermore, "statutory damages are available without proof of actual
damages."  *Id*. at 781.

152 (5th Cir. 1996) (FDCPA statutory damages are "punitive damages, designed to punish [the defendant] for his wrongful acts"); *Sanders v. Jackson*, 209 F.3d 998, 1002 (7th Cir. 2000) (describing FDCPA statutory damages as a "penalty" and "statutory punitive damages"); *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir.1997) (holding that the plaintiff's failure to read the offending dun was of no consequence because "he is not seeking actual damages. He is seeking only statutory damages, a penalty that does not depend on proof that the recipient of the letter was misled"); *Savino v. Computer Credit, Inc*., 164 F.3d 81, 86 (2d Cir. 1998) (same); *Voris v. Resurgent Capital Services, L.P.*, 494 F.Supp.2d 1156, 1164 (S.D.Cal. 2007) (same); *Myers v. LHR, Inc*., 543 F.Supp.2d at 1218 ("Statutory damages are akin to a penalty and require the court to consider the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional"); *Ayzelman v. Statewide Credit Services Corp.*, 242 F.R.D. 23, 28 (E.D.N.Y. 2007) (characterizing statutory damages as a "penalty"); *Hartman v. Meridian Financial Services, Inc*., 191 F.Supp.2d 1031, 1050 (W.D.Wis. 2002) (same).  Arrow concedes that these statutory

damages indeed serve to "punish[ ]" and  are a "penalty" designed as a "deterrent."  Appellant's Brief 32-33.[13]

Therefore, the ban on multiple compensatory recoveries on which Arrow relies is inapplicable to these statutory penalties.  As a result, the district court correctly framed the question as one limited to statutory interpretation: "The language of the particular statute determines whether, and when, cumulative penalties are permitted."  36 Am. Jur. 2d *Forfeitures and Penalties* § 62 (2001) (footnote omitted); *accord* Hursh, Annotation, *Recovery of Cumulative Statutory Penalties*, 71 A.L.R.2d 986, § 3 (1960) ("There is what amounts to universal agreement among courts that the question whether cumulation of statutory penalties is proper is essentially one of construction of the statute imposing the penalty") (footnote omitted).

The cases cited by Arrow purportedly "addressing duplicative recoveries under the FDCPA and companion statutes in other States" (Appellant's Brief 28) illustrate this rule and confirm the result below.  In contrast to § 1788.32, the equally clear Pennsylvania law applied in *Piper v. Portnoff Law Associates*, 216 F.R.D. 325, 328 (E.D.Pa. 2003), states,

---

[13] Throughout the trial Arrow also acknowledged to the jury that the statutory damages were a "penalty" for the purpose of "punishment."  Dk. 225, pp. 111-113, 115-116; Dk. 226, pp. 381, 394-395.  Furthermore, Arrow took the same position during the jury instruction conference (Dk. 225, p. 40), and the trial court so instructed the jury.  Dk. 225, p. 22; Dk. 226, p. 365.

"Remedies available for violation of this act and the Fair Debt Collection

Practices Act...shall not be cumulative, and debt collectors who violate this

act and the Fair Debt Collection Practices Act shall not incur cumulative

penalties"). Similarly, in Wisconsin "long established" state law barred the

award of both state statutory penalties and FDCPA statutory damages.

*Bruesewitz v. Law Offices of Gerald E. Moore & Associates, P.C.*, 2006 WL

3337361, *3 (W.D.Wis. Nov. 15, 2006), citing *Associates Financial

Services Co. of Wisconsin v. Hornik*, 114 Wis.2d 163, 173, 336 N.W.2d 395,

400 (Wis.App. 1983) (holding that a plaintiff may not recover statutory

damages under both the FDCPA and the Wisconsin Consumer Act for the

same misconduct); *see e.g.* Iowa Debt Collection Practices Act, Iowa Code

§ 537.5108(7) ("The remedies of this section are in addition to remedies

otherwise available for the same conduct under law other than this chapter,

but no double recovery of actual damages may be had").[14]

Finally, Arrow's attempt to avoid the clear statutory mandate by

appealing to its perception of proper public policy in this regard – not

surprisingly, weighing in its favor – is of no consequence.  Appellant's Brief

---

[14] The third case cited by Arrow supposedly illustrating its point, *Dowling v. Litton Loan Servicing, LP*, 2006 WL 3498292 (S.D.Ohio Dec. 1, 2006), does not address penalty damages at all but simply applies the rule against duplicative recoveries in the context of actual damages.  2006 WL 3498292 at *14 (rejecting the plaintiff's attempt "to recover its alleged actual damages under each of the four statutes for which she brings suit").

32-33.  The policy determination here has already been made in Sacramento and Washington by public legislatures, who have expressed themselves in plain terms that, not surprisingly, reach the opposite conclusion from Arrow's parochial assessment.

## III. CONCLUSION

For the foregoing reasons, the judgment below should be affirmed, with costs and reasonable appellate attorneys' fees awarded to Mr. Gonzales.[15]

Respectfully submitted,

*/s/ Richard J. Rubin*
Richard J. Rubin
1300 Canyon Road
Santa Fe, NM  87501
(505) 983-4418

---

[15] Arrow omits from its Conclusion the mandatory Fed. R. App. P. 28(a)(10) statement of "the precise relief sought" with regard to its claim regarding cumulative statutory damages, limiting the relief sought to remand regarding liability alone.  Appellant's Brief 34.  If the lower court's ruling on cumulative damages were in error, the appropriate remedy would no doubt be a new trial to establish a single statutory damage award since the court's ruling was an integrated one that included what would then be established as an erroneous jury instruction "[w]ith respect to double recovery."  ER 43. *See Millenkamp v. Davisco Foods Intern., Inc.*, 562 F.3d 971, 977 (9th Cir. 2009) ("An erroneous ruling that affects the substantial rights of a party is grounds for reversal, unless it affirmatively appears from the whole record that it was not prejudicial. This is particularly true of an error in jury instructions") (citation omitted).

Elizabeth J. Arleo
1672 Main Street, Suite E, PMB 133
Ramona, CA  92065
(760) 789-8000

O. Randolph Bragg
Horwitz, Horwitz & Associates
25 East Washington Street
Suite 900
Chicago, Illinois 60602
(312) 372-8822

Shaun Khojayan
Law Offices of Shaun Khojayan
   & Associates, P.L.C.
9454 Wilshire Blvd., Suite 600
Beverly Hills, CA 90212
(310) 274-6111

Attorneys for Plaintiff-Appellee
Johnny Gonzales

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, undersigned counsel declares that there are no known related cases pending in this Court.

## CERTIFICATION OF COMPLIANCE PURSUANT TO FED. R. APP. P. 32(a)(7)(C) AND CIRCUIT RULE 32-1 FOR CASE NUMBER 10-55379

I certify pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1 that the attached Brief of Appellee complies with the type-volume

limitation of Fed. R. App. P. 32(a)(5)and (6) as it is proportionately spaced, has a typeface of 14 points, and contains 9,841 words, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii).


Date: January 7, 2011                    */s/ Richard J. Rubin*
                                         Richard J. Rubin

## CERTIFICATE OF SERVICE

I hereby certify I electronically filed the foregoing Brief of Plaintiff-Appellee with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system that on this 7th day of January, 2011.

I further certify that all participants in this case are registered CM/ECF users that service will be accomplished by the appellate CM/ECF system.


                                         */s/ Richard J. Rubin*
                                         Richard J. Rubin